UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

<u>For Online Publication Only</u>

-------------------------------------------------------------------X
BRYAN ZULLI,
also known as BRIAN ZULLI,

               Plaintiff,

        -against-

JP MORGAN CHASE BANK, MARTHA
LUFT, INDIVIDUALLY AND IN HER
OFFICIAL CAPACITY AS A FORMER JUSTICE
OF THE NYS SUPREME COURT, SUFFOLK
COUNTY, FRANK TINARI, INDIVIDUALLY
AND IN HIS OFFICIAL CAPACITY AS A
JUSTICE OF THE NYS SUPREME COURT,
SUFFOLK COUNTY, SHAPIRO, DICARO &
BARAK, LLC, KNUCKLES, KOMOSINSKI &
MANFRO, LLP, and "JOHN DOE #1
THROUGH 10"

               Defendants.

**<u>MEMORANDUM AND ORDER</u>**
23-CV-3519 (JMA) (AYS)

-------------------------------------------------------------------X
**APPEARANCES:**

Bryan Zulli, AKA Brian Zulli
5 Fleet Court
Northport, New York 11768
      *<u>Pro</u> <u>se</u> Plaintiff*

Brian Peter Scibetta, Esq.
McCalla Raymer Leibert Pierce, LLC
420 Lexington Avenue, Suite 840
New York, New York 10170

John E. Brigandi, Esq.
Knuckles Komosinski & Manfro, LLP
600 East Crescent Avenue, Suite 201
Upper Saddle River, New Jersey 07677

Peter Andrew Swift, Esq.
Habba Madaio & Associates, LLP
1430 US Highway 206, Suite 240
Bedminster, New Jersey 07921
      *Attorneys for Defendant JP Morgan Chase Bank*

Richard H. Yorke, Esq.
New York State Attorney General's Office
200 Old Country Road
Mineola, New York 11501
     *Attorney for Defendants Martha Luft and Frank Tinari*

Robert W. Griswold, Esq.
John A. Dicaro, Esq.
LOGS Legal Group, LLP
175 Mile Crossing Boulevard
Rochester, New York 14624
     *Attorney for Defendant Shapiro, Dicaro & Barak, LLC*

John E. Brigandi, Esq.
Knuckles Komosinski & Manfro, LLP
600 East Crescent Avenue, Suite 201
Upper Saddle River, New Jersey 07677
     *Attorney for Defendant Knuckles, Komosinski & Manfro, LLP*

**AZRACK, United States District Judge:**

Plaintiff Bryan Zulli ("Plaintiff" or "Mr. Zulli") brings this *pro se* action against numerous defendants, including JP Morgan Chase Bank, National Association ("Chase"); former New York State Supreme Court Judge Martha Luft ("Judge Luft"), New York State Supreme Court Judge Frank Tinari ("Judge Tinari") (together, the "Judicial Defendants"); Shapiro, Dicaro & Barak, LLP and Knuckles, Komosinski & Manfro, LLP (together, with Shapiro, the "Law Firm Defendants" and, collectively, the "Defendants") seeking damages, declaratory and injunctive relief regarding an ongoing state foreclosure proceeding on property located at 5 Fleet Court, Northport, New York 11768.  (See Compl., ECF No. 1.)  Defendants have filed four separate motions to dismiss the Complaint for lack of subject matter jurisdiction and for failure to state a claim.  (See ECF No. 31, Knuckles, Komosinski & Manfro, LLP's Motion; ECF No. 32, Chase's Motion; ECF No. 33, Judicial Defendants' Motion; ECF No. 35, Shapiro, Dicaro & Barak, LLP's Motion.)

For the reasons stated below, the Court grants Defendants' motions and dismisses Plaintiff's Complaint in its entirety.

## I.  BACKGROUND

Plaintiff's Complaint asserts various theories of wrongdoing related to a mortgage foreclosure action in state court (the "Foreclosure Action").  The following facts are taken from Plaintiff's Complaint, the record before the Court, and fillings from the Foreclosure Action.[1]  The Court takes judicial notice of the Suffolk County Supreme Court docket in <u>JP Morgan Chase, National Assoc. v.  Bryan Zulli</u>, Index No. 032708/2009, which reflects the ongoing Foreclosure Action, which commenced on August 17, 2009.  <u>See</u> <u>Kramer v. Time Warner Inc.</u>, 937 F.2d 767, 774 (2d Cir. 1991) ("[C]ourts routinely take judicial notice of documents filed in other courts . . . not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.") (citations omitted).  The Court can also consider exhibits—such as copies of the mortgage and mortgage assignments—which are attached or integral to the Complaint.  <u>Sira v. Morton</u>, 380 F.3d 57, 67 (2d Cir. 2004).

## A.  <u>The Mortgage</u>

On September 24, 2007, Sylvia Zulli (the "Borrower," or "Ms. Zulli") entered into a $1,220,000 mortgage loan (the "Loan") with Washington Mutual Bank, FA ("Washington Mutual") secured by a mortgage (the "Mortgage") against the real property located at 5 Fleet Court, Northport, New York 11768 (the "Property").  (<u>See</u> Mortgage documents, ("Ex. 2"), ECF No. 32-3, at 22-51.)[2]  Mr. Zulli asserts that he has an ownership interest in the Property on the basis of a quitclaim deed dated, February 26, 2005, whereby Borrower purported to transfer the Property

---

[1] All non-conclusory, factual allegations in the Complaint are accepted as true for purposes of this motion, unless they are contradicted by other allegations, attached exhibits, or documentary evidence integral to the Complaint.  <u>See</u> <u>L-7 Designs, Inc. v. Old Navy</u>, LLC, 647 F.3d 419, 422 (2d Cir. 2011).

[2] For ease of reference, the Court refers to the electronic document filing system ("ECF") pagination.

from Borrower's sole ownership to ownership by Borrower and Mr. Zulli as joint tenants. (Quitclaim Deed, ("Ex. 6"), ECF No. 37-2, Ex. 6.)  The Deed was not recorded with the Suffolk County Clerk's Office until April 27, 2011.  (Id.)  According to Mr. Zulli, on April 5, 2011, he notified the state court and Chase's then-lawyer Bonchonsky & Zaino ("Bonchonsky") of his joint deed with right of survivorship with Ms. Zulli.  (Compl. ¶¶ 44, 97.)

On September 25, 2008, Chase acquired the Loan through a Purchase and Assumption Agreement entered into with the Federal Deposit Insurance Corporation ("FDIC"), as Receiver for Washington Mutual.  (See Brian P. Scibetta Decl., ECF No. 32-1, ¶ 4.)[3]  Subsequently, on August 7, 2012, the Note and Mortgage were transferred to Chase as reflected by an Assignment of Mortgage recorded on September 28, 2012.  (See Ex. 2, at 52-55.)  On April 6, 2017, Chase assigned the Mortgage to U.S. Bank Trust, N.A., as Trustee for LSF9 Master Participation Trust (the "LSF9 Trust"), recorded with the Suffolk County Clerk's Office on December 7, 2017. (Compl. ¶ 44, 146; see Mortgage Assignment, ("Ex. 3"), ECF No. 32-4.)  Chase transferred the servicing of the Loan to Caliber Home Loans, Inc. ("Caliber"), effective December 15, 2016.  (See Nov. 30, 2016 letter from Chase to Ms. Zulli, ("Ex. 4"),  ECF No. 32-5.)

On January 8, 2021, the Mortgage was further assigned by LSF9 Trust to U.S. Bank National Association as Trustee for the RMAC Trust, Series 2016-CTT (the "RMAC Trust") and recorded with the Suffolk County Clerk's Office on March 23, 2021.  (Compl. ¶ 44; Mortgage Assignment, ("Ex. 5"), ECF No. 32-6.)

---

[3]    The Purchase and Assumption Agreement can be found on the FDIC's website, located at https://www.fdic.gov/foia/files/washington_mutual_p_and_a.pdf,

B.  **The Foreclosure Action**

On or about August 17, 2009, Chase, as successor in interest to Washington Mutual, commenced a foreclosure proceeding against Borrower in Suffolk County Supreme Court, alleging that Borrower had defaulted on her Mortgage payments.  (Compl. ¶ 44; see JP Morgan Chase, Index No. 32708/2009.)  Mr. Zulli was not a named party in the Foreclosure Action at that time. Borrower filed an Answer in the Foreclosure Action on February 11, 2010, claiming that the Mortgage was "fraud from the inception."  (Compl. ¶ 44(c).)  She died three months later, on May 13, 2010.  (Id. ¶ 44(d).)  According to the Complaint, on January 13, 2011, Chase's then-counsel, Bonchonsky, filed a Request for Judicial Intervention ("RJI") in the Foreclosure Action.  (Id. ¶ 44(d).)  In a February 7, 2011 letter from Mr. Zulli to Bonchonsky, he notified Chase of Ms. Zulli's death.  (Id. ¶ 44(e).)

On or about October 1, 2012, Mr. Zulli, who was not yet a party to the Foreclosure Action, made the first of multiple motions to dismiss the Foreclosure Action.[4]  (Id. ¶ 44(i).)  In his 2012 motion, Mr. Zulli argued that he should have been named as a defendant in the original complaint, and that, regardless, the Mortgage is void because he was not a signor.  (Plaintiff's Oct. 1, 2012 motion, ("Ex. D"), ECF No. 32-20.)  Mr. Zulli alleges that, on January 29, 2013, Judge Lasalle "granted" his motion to dismiss as noted on the New York State Web Civil-Supreme e-courts website ("e-courts"), but "the written order has never been made available" to him.  (Compl. ¶ 44.) Mr. Zulli claims that "[t]o date, a copy of [Judge] LaSalle's written order still cannot be obtained even though a signed order exists as evidenced by e-Courts."  (Id. ¶ 45.)  He further claims that Judge LaSalle's 2013 order granting his dismissal motion has been changed on e-Courts from

---

[4] Between October 2019 and January 2024, Plaintiff filed eleven motions in the Foreclosure Action, many of which were still pending at the time the instant case was filed.  (See Notices of motions, ("Ex. F"), ECF No. 31-7; e-courts.)

"Granted" to "Closed."  (Id. ¶ 44.)  According to Mr. Zulli, on January 29, 2013, a stay was placed on the Foreclosure Settlement Conference.  (Id. ¶ 44(j).)

On February 5, 2016, Chase filed a consent to change attorney from Bonchonsky to Defendant, Shapiro & DiCaro, LLP ("Shapiro") in the Foreclosure Action.  (Id. ¶ 44 (n).)[5]

On or about May 31, 2017, Chase moved to amend the caption of the complaint in the Foreclosure Action to dismiss Ms. Zulli and add Mr. Zulli as a defendant.  (Compl. ¶ 44(p).)  Mr. Zulli claims that he was never served with Chase's 2017 Motion to Amend and that it was not made available to him before April 29, 2022 when it was recorded on e-Courts.  (Id. ¶ 44(r).)  On March 11, 2019, Judge Luft—who was now presiding over the case—granted Chase's 2017 Motion to Amend.  (Id. ¶ 44(s).)  The amended complaint in the Foreclosure Action was filed on May 7, 2019, (see Ex. 2, at 2-10), and according to Mr. Zulli, he was served by nail and mail on September 28, 2019.  (Id. ¶ 44(u).)

On January 24, 2022, a consent to change attorney was filed in the Foreclosure Action, substituting Knuckles, Komosinski & Manfro, LLP ("Knuckles") for Shapiro.[6]  (Compl. ¶ 143; Pl. Aff. in Opp. to Mot. to Dismiss ("Pl. Aff."), Ex. M, ECF No. 31-29.) .)

---

[5] Shapiro first changed its name to Shapiro, DiCaro & Barak, LLP and is now named LOGs Legal Group LLP.  (See Chase Opp'n. at 8, n. 1.)  For purposes of the instant motion, the Court will consistently refer to the Law Firm Defendant as "Shapiro."

[6] This consent was filed by the attorney for the plaintiff in the Foreclosure Action.  As explained infra, the named plaintiff in the Foreclosure Action was still Chase.  The consent to change attorney was signed by "Rushmore Loan Management LLC," the "Attorney in Fact for U.S. Bank National Association . . as trustee for the RMAC Trust . . . successor in interest to case caption plaintiff."  (Pl. Aff, Ex. M.)

Mr. Zulli filed additional motions to dismiss the Foreclosure Action on March 7, 2022, April 11, 2022, and July 12, 2022. (See e-courts.) Knuckles filed opposition papers to those motions to dismiss, including related letters in November and December 2022.[7]

The pending Foreclosure Action has been stayed numerous times due to multiple bankruptcy filings by Mr. Zulli. (See e-courts (noting stays due to bankruptcy filings on May 31, 2019, December 12, 2022, and September 30, 2024.)

On November 2, 2023, Judge Tinari issued a written order denying three of Mr. Zulli's motions, including: his March 7, 2022 motion to dismiss the Foreclosure Action, his January 31, 2020 motion to compel Judge LaSalle's staff to produce transcripts from a 2013 hearing on his

---

[7] One of Mr. Zulli's primary arguments in the Foreclosure Action and in the instant suit concerns Chase's assignment of the Mortgage to the LSF9 Trust in April 2017. Mr. Zulli contends that Defendants engaged in fraud (and violated the FDCPA) by improperly naming Chase as the plaintiff in the May 2017 Motion to Amend (and the related Amended Complaint) and continuing to prosecute the Foreclosure Action with Chase as the plaintiff.

New York C.P.L.R. 1018, however, permits a successor-in-interest to continue an action in the name of the original party unless the court directs otherwise. Woori Am. Bank v. Glob. Universal Grp. Ltd., 134 A.D.3d 699, 700, 20 N.Y.S.3d 597, 599 (App. Div. 2d Dep't 2015); see also CIT Bank, N.A. v. Zisman, No. 20-1314, 2024 WL 763392, at *2 (2d Cir. Feb. 26, 2024). Moreover, as explained infra, Mr. Zulli's FDCPA claims concerning the 2017 Motion to Amend and the Amended Complaint are all time-barred.

Relatedly, Mr. Zulli also alleges that Defendants engaged in fraud and violated the FDPCA because, in November and December 2022, Knuckles filed letters with the state court stating that Knuckles represents "plaintiff . . . Chase." (Pl. Aff., Exs. O, P.) Mr. Zulli contends that these letters misrepresent that Chase was a party to the Foreclosure Action and were filed to make it appear that Chase was a proper party. These arguments are meritless because, pursuant to C.P.L.R. 1018, Chase was still properly listed as the named plaintiff in the Foreclosure Action. Additionally, Mr. Zulli's suggestions that these letters were deceptive and fraudulent are also belied by filings on the state court docket. First, the January 22, 2022 consent to change attorney explicitly states a subsequent assignee is the "successor in interest to case caption plaintiff." Second, Plaintiff's April 2022 motion to dismiss makes clear that he was already aware, in April 2022, that Chase had assigned the Mortgage in April 2016 and that the Mortgage was assigned again in 2021. (See Mr. Zulli's Apr. 11, 2022 Motion to Dismiss and Exhibits, e-courts, NYSECF Doc. Nos. 19, 24, 25.) Third, Knuckles' filings in November and December 2022 were not deceptive in any fashion, particularly when viewed in light of related filings made by Knuckles in December 2022. Knuckles' brief November 2022 letter requested permission to file opposition papers to various motions to dismiss filed by Mr. Zulli in the Foreclosure Action. (ECF No. 31-31.) Relatedly, Knuckles' brief December 9, 2022 letter references these opposition papers (which had been filed a few days earlier) and asked Justice Laft to consider those opposition papers and to not adjourn those motions any further given Plaintiff's practice of continuously filing new motions. (ECF No. 32-32.) Notably, the opposition papers referenced in Knuckles' November and December 2022 letters clearly identify the relationship between Chase and the current assignee. The first paragraph of the attorney affidavit filed in opposition to the motion to dismiss explicitly states that Knuckles is the attorney for "U.S. Bank National Association, not in its individual capacity but solely as trustee for the RMAC Trust, Series 2016-CTT ("U.S. Bank"), successor-in-interest to plaintiff JPMorgan Chase Bank, National Association ("Plaintiff")." (Affirm in Opp'n., e-courts, NYSECF Doc. No. 72.)

October 2012 dismissal motion, and his April 23, 2023 motion for a mandatory settlement conference pursuant to CPLR 3408.  (See November 2, 2023 Order, ("Ex. A"), ECF No. 35-5, at 2-4.)  In his March 7, 2022 dismissal motion, Mr. Zulli claimed that he should have been named as a defendant in the original complaint, that the Mortgage is void as he was not a signor, and that the court lacks jurisdiction over him because the case had already been dismissed in 2013 by Judge LaSalle.  (Id. at 3.)  In denying Mr. Zulli's motion, Judge Tinari noted that Mr. Zulli received the Property upon Ms. Zulli's death, but that the deed was not recorded in a timely manner.  (Id. at 4.)  Additionally, Judge Tinari pointed out that Mr. Zulli did not deny that the Loan has been in default since 2008.  (Id.)  With respect to Mr. Zulli's motion to compel production of court transcripts, Judge Tinari explained that "[i]t is beyond the Court's purview to compel other court staff members to turn anything over."  (Id.)  Finally, Judge Tinari denied Mr. Zulli's request for a mandatory settlement conference pursuant to CPLR 3408, noting that "in 2011, this matter was found ineligible for a CPLR 3408 conference," and "several conference dates were scheduled for the defendant for which he never appeared."  (Id.)  On December 4, 2023, Mr. Zulli appealed Judge Tinari's November 2, 2023 decision and order.  (See e-courts.)  That appeal is still pending.

On January 5, 2024, Plaintiff made a motion to disqualify Judge Tinari in the Foreclosure Action.  (See e-courts.)

On May 10, 2023, Mr. Zulli attempted to remove the Foreclosure Action to the United States District Court for the Eastern District of New York; however, the Court found his motion untimely and remanded the case back to state court.  (See Docket, 23-CV-3521, May 31, 2023 Order.)  That same day, Mr. Zulli commenced the instant action.

**C.  The Instant Action**

Liberally construing *pro se* Plaintiff's Complaint, he asserts both federal and state causes of action for: (1) violations of the Due Process Clause, pursuant to 42 U.S.C. § 1983; (2) violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, et seq. ("FDCPA"); (3) common law fraud; (4) conspiracy to commit common law fraud; (4) expiration of the statute of limitations to foreclose; and (5) violations of various provisions of New York statutory law.   (See Compl.) Plaintiff seeks monetary damages as well as dismissal of the Foreclosure Action and cancelation and discharge of the underlying Mortgage.  (Id.)

Currently pending are Defendants' four separate motions to dismiss the Complaint for lack of subject matter jurisdiction and for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6).

Collectively, Defendants' motions argue that the Court lacks subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), pursuant to the Younger and Colorado River abstention doctrines as well as Rooker-Feldman.  Additionally, the Judicial Defendants contend that they are immune from suit pursuant to the Eleventh Amendment and judicial immunity. Finally, Defendants argue that Plaintiff's Complaint fails to state a federal claim pursuant to Fed. R. Civ. P. Rule 12(b)(6) and that because there is no diversity jurisdiction, the Court should decline to exercise supplemental jurisdiction of Plaintiff's state law claims.

Plaintiff opposed Defendants' motions.  (See ECF Nos. 31-14, 32-16, 33-2, 35-7.)

## II. DISCUSSION

### A. <u>Standard of Review</u>

The Court is mindful that when considering a motion to dismiss a *pro se* complaint, the court must construe the complaint liberally and interpret the complaint "to raise the strongest arguments they suggest." <u>Triestman v. Federal Bureau of Prisons</u>, 470 F.3d 471, 474 (2d Cir. 2006). "However, mere conclusions of law or unwarranted deductions need not be accepted." <u>Bobrowsky v. Yonkers Courthouse</u>, 777 F. Supp. 2d 692, 703 (S.D.N.Y. 2011) (internal quotation marks and citations omitted).

"Where, as here, the defendant[s] move[] for dismissal under Rule 12(b)(1), Fed. R. Civ. P., as well as on other grounds, the court should consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined." <u>Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n</u>, 896 F.2d 674, 678 (2d Cir. 1990) (internal quotation marks and citations omitted).

### 1. <u>Fed. R. Civ. P. 12(b)(1)</u>

Federal Rule of Civil Procedure 12(b)(1) requires the dismissal of a claim when there is a "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). A case is properly dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) "when the district court lacks the statutory or constitutional power to adjudicate it." <u>Makarova v. United States</u>, 201 F.3d 110, 113 (2d Cir. 2000); <u>see</u> Fed. R. Civ. P. 12(b)(1). In reviewing a motion to dismiss under this Rule, the Court accepts all factual allegations in the complaint as true. <u>Shipping Fin. Servs. Corp. v. Drakos</u>, 140 F.3d 129, 131 (2d Cir. 1998). However, the Court should not draw inferences favorable to the party asserting jurisdiction. <u>Id.</u> In resolving a jurisdictional issue, the Court may consider affidavits and other materials beyond the pleadings but may not rely on mere conclusions or

hearsay statements contained therein.  J.S. ex rel. N.S. v. Attica Cent. Sch., 386 F.3d 107, 110 (2d Cir. 2004); see also All. For Envtl. Renewal, Inc. v. Pyramid Crossgates Co., 436 F.3d 82, 89, n. 8 (2d Cir. 2006) ("The presentation of affidavits on a motion under Rule 12(b)(1) . . . does not convert the motion into a motion for summary judgment under Rule 56.").

Motions to dismiss invoking the Colorado River abstention doctrine or the Younger abstention doctrine are assessed under the same standard as a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).

### 2.  Fed. R. Civ. P. 12(b)(6)

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a plaintiff must allege sufficient facts "to state a claim to relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).  A claim is facially plausible only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556).  Mere labels and legal conclusions will not suffice.  Twombly, 550 U.S. at 555.  In reviewing a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff.  Cleveland v. Caplaw Enters., 448 F.3d 518, 521 (2d Cir. 2006).  Motions to dismiss invoking *res judicata* and collateral estoppel are properly brought under Rule 12(b)(6).  See Hirsch v. Desmond, No. 08–CV–2660, 2010 WL 3937303, at *2 (E.D.N.Y. Sept. 30, 2010) (collateral estoppel); Wiercinski v. Mangia 57, Inc., No. 09–CV–4413, 2010 WL 2681168, at *1 (E.D.N.Y. July 2, 2010) (*res judicata*).

## B. *Colorado River* Abstention Standard

In general, "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." Colo. River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1976). But the Supreme Court has recognized a number of "extraordinary and narrow exceptions to a federal court's duty to exercise its jurisdiction." Woodford v. Cmty. Action Agency of Greene Cty., Inc., 239 F.3d 517, 522 (2d Cir. 2001) (internal quotation marks omitted). Under Colorado River, "a federal court may abstain from exercising jurisdiction when parallel state-court litigation could result in 'comprehensive disposition of litigation' and abstention would conserve judicial resources." Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist., 673 F.3d 84, 100 (2d Cir. 2012) (quoting Colorado River, 424 U.S. at 817-18). "Lawsuits are considered 'parallel' if 'substantially the same parties are contemporaneously litigating substantially the same issues' in different forums." Great South Bay Med. Care, P.C. v. Allstate Ins. Co., 204 F. Supp. 2d 492, 496 (E.D.N.Y. 2002) (quoting Dittmer v. Cty. of Suffolk, 146 F.3d 113, 118 (2d Cir. 1998)). However, "[p]erfect symmetry of parties and issues is not required." Potente v. Capital One, N.A., No. 16-CV-3570, 2018 WL 1882848, at *4 (E.D.N.Y. Apr. 19, 2018) (citation and internal quotation marks omitted). "Rather, parallelism is achieved where there is a substantial likelihood that the state litigation will dispose of all claims presented in the federal case." Mazuma Holding Corp. v. Bethke, 1 F. Supp. 3d 6, 20 (E.D.N.Y. 2014) (internal citations omitted). Once the threshold requirement of parallelism is met, district courts must consider the following six factors to determine whether it should abstain:

(1) whether the controversy involves a *res* over which one of the courts has assumed jurisdiction; (2) whether the federal forum is less inconvenient than the other for the parties; (3) whether staying or dismissing the federal action will avoid piecemeal litigation; (4) the order in which the actions were filed, and whether proceedings have advanced more in one forum than in the other; (5) whether federal law provides the rule of decision; and (6) whether the state procedures are adequate to protect the plaintiff's federal rights.

Woodford, 239 F.3d at 522.  In weighing these factors, district courts must consider "the heavy presumption favoring the exercise of jurisdiction[,]" Aventura Techs. Inc. v. World of Residensea II Ltd., 646 F. App'x 92, 94 (2d Cir. 2016), and the principle that "federal courts have a 'virtually unflagging obligation . . . to exercise the jurisdiction given them,'" Colorado River, 424 U.S. at 821 (quoting England v. Louisiana State Bd. of Medical Examiners, 375 U.S. 411, 415 (1964)). "Where a Colorado River factor is facially neutral, that 'is a basis for retaining jurisdiction, not for yielding it.'" Niagara Mohawk, 673 F.3d at 101 (2d Cir. 2012) (quoting Woodford, 239 F.3d at 522).

"[W]hether to abstain on Colorado River grounds is committed to the district court's discretion." Woodford, 239 F.3d at 523.  A court's decision to decline jurisdiction "does not rest on a mechanical checklist," but rather depends on "a careful balancing of the important factors as they apply in a given case."  Server v. Nation Star Mortg., LLC, No. 3:16-CV-1582, 2017 WL 3097493, at *3 (D. Conn. July 20, 2017) (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 16 (1983).  Therefore, "in addition to the six criteria, courts consider a wide variety of factors when conducting the abstention analysis."  Id.

## C. <u>Application</u>

### 1. <u>The State Court Action and the Federal Action are Parallel</u>

The pending Foreclosure Action is a parallel proceeding to this action. First, "substantially the same parties" are contemporaneously litigating both cases. See <u>Dittmer</u>, 146 F.3d at 118. Mr. Zulli and Chase are parties in both actions. While the Judicial Defendants and the Law Firm Defendants are not named parties to the Foreclosure Action, "perfect symmetry" is not required. See <u>Krondes v. Nationstar Mortg.</u>, LLC, No. 17-CV-4974, 2018 WL 2943774, at *3 (S.D.N.Y. June 12, 2018) (finding federal action and related state foreclosure action "parallel" where multiple defendants in federal action were not party to state action), <u>aff'd</u>, 789 F. App'x 913 (2d Cir. 2020) (summary order); <u>Phillips v. Citibank, N.A.</u>, 252 F. Supp. 3d 289, 298 (S.D.N.Y. 2017) (finding plaintiffs cannot "entirely avoid[ ] [the <u>Colorado River</u> doctrine] by the simple expedient of naming additional parties"). Notably, here, the Judicial Defendants named in the instant case presided over and made rulings in the Foreclosure Action to which Plaintiff objects, while the Law Firm Defendants litigated the Foreclosure Action for Chase and its assignees. Thus, the parties in this action all have some interest in the Foreclosure Action.

Second, Plaintiffs seek to litigate "substantially the same issues" in both forums. <u>Dittmer</u>, 146 F.3d at 118. Both actions turn on the timeliness of the Foreclosure Action and the propriety of Chase's conduct in pursuing the Foreclosure Action. The instant Complaint alleges that Defendants violated various federal and state laws by fraudulently commencing and maintaining the Foreclosure Action and that Chase lacked standing to pursue the Foreclosure Action. (See generally Compl.) Specifically, the Complaint asserts that Chase and the Law Firm Defendants lied to the state court with respect to the date they discovered that Plaintiff was a necessary party to the Foreclosure Action to circumvent the statute of limitations. (Id. ¶¶ 44(h),(i), 112-13.) It also

14

alleges fraud and due process violations by the Judicial Defendants and fraud upon the court by the Law Firm Defendants.  (Id. ¶¶ 58-69, 141-149)  Specifically, the Complaint alleges that the Juridical Defendants were aware of, and intentionally ignored, Judge Lasalle's 2013 order that purportedly granted Plaintiff's dismissal motion, and, therefore, any rulings in the Foreclosure Action thereafter are void because the state court lacks jurisdiction over him.  (Id. ¶¶ 99, 106, 112-17.)  The Complaint also alleges a violation of Plaintiff's right to due process for lack of notice and an opportunity to be heard in the Foreclosure Action with respect to Chase's 2017 motion to amend the caption to remove Ms. Zulli and add him as a defendant.  (Id. ¶¶ 12-13, 58-69.)  These claims are substantially identical to the defenses raised by Mr. Zulli in the numerous motions to dismiss he made in the Foreclosure Action.

For example, in his April 11, 2022 motion to dismiss the Foreclosure Action, Mr. Zulli argued that "fraud is being used to obtain a judgment," "the court does not [have] jurisdiction of the person of [Mr. Zulli]," and the complaint should be dismissed due to "fraud upon the Court and fraud by the Court."  (Ex. F, at 9-10.)  Again, in his July 11, 2022 motion to dismiss the Foreclosure Action, Mr. Zulli argued that Chase lacked standing to sue, "fraud is being used to obtain a judgment," "the court does not have jurisdiction of the person of the defendant," "violation [of] the Fourteenth Amend[ment] Due Process [Clause]," and the Foreclosure Action is "statutorily time-barred[] and the 2019 Motion of Judge LaSalle must be enforced."  (Id. at 11-12; see also July 11, 2022 Zulli Aff. in Support of Motion to Dismiss, ("Ex. B"), ECF No. 35-6) ("The Order of 2019 by Judge Luft is VOID as the matter is based upon fraud upon the court and had previously been ruled on by Judge Hector LaSalle.")  So too, in his November 25, 2022 motion to dismiss the Foreclosure Action, Plaintiff requested that the court "reject all papers filed by attorneys representing Chase who had no valid authority due to Chase not being a plaintiff who could claim

to have suffered an injury for which relief cold be granted," and to strike "[a]ll papers filed with improper Consent to Change Attorney [as] invalid and struck." (Ex. F, at 14.) Thus, the state Foreclosure Action and the instant action are "essentially the same." See Krondes, 2018 WL 2943774, at *3 (finding parallelism between plaintiff's state foreclosure action and his federal RICO, TILA, and due process claims) (citing Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Karp, 108 F.3d 17, 22 (2d Cir. 1997)); Sitgraves v. Fed. Home Loan Mortg. Corp., 265 F. Supp. 3d 411, 413 (S.D.N.Y. 2017) (federal and state actions were parallel when both questioned whether Bank of America "may enforce the subject note and mortgage"); Sander v. JPMorgan Chase Bank, N.A., No. 22-CV-1543, 2023 WL 1866887, at *6 (S.D.N.Y. Feb. 9, 2023) (federal action alleging foreclosure fraud, conspiracy, and violations of RICO, TILA, and due process parallel with state foreclosure proceedings).

Moreover, although the relief requested by the plaintiff need not be identical, see Potente, 2018 WL 1882848, at *4, the instant Complaint's request for declaratory and injunctive relief dismissing the Foreclosure Action and canceling and discharging the underlying mortgage further demonstrates the parallel nature of the two actions. (See Compl., Wherefore clause); see also Krondes, 2018 WL 2943774, at *3 (stating that "courts agree" Colorado River abstention may be warranted when litigants file "actions in district courts seeking . . . to enjoin an ongoing state foreclosure action based on alleged violations of federal and state law."); Phillips, 252 F. Supp. 3d at 296 ("[T]he fact that [p]laintif[f] seek[s] different . . . forms of recovery in this action does not defeat parallelism, where the underlying events remain identical.")

Thus, the Court finds that the instant case is parallel to the Forecloure Action because the main issue in the pending state court litigation—the proprietary of the foreclosure proceeding against Plaintiff—is also the main issue in this federal action. See Bromfield v. Lend-Mor Mortg.

Bankers Corp., No. 15-CV-1103, 2016 WL 632443, at *4 (D. Conn. Feb. 17, 2016) (citing Dunne v. Doyle, No. 3:13-CV-01075 VLB, 2014 WL 3735287, at *8 (D. Conn. July 28, 2014) ("[c]omplete identity of parties and claims is not required; the parallel litigation requirement is satisfied when the main issue in the case is the subject of already pending litigation"); Sitgraves, 265 F. Supp. 3d at 413-15 (complaint dismissed pursuant to Colorado River abstention doctrine because "the mortgage foreclosure issues should be determined in the state [court]").

Accordingly, the Court finds parallelism here.

### 2.  **The Colorado River factors weigh in favor of abstention**

Having found that the two actions are parallel, the Court next considers the six-factor test.

The first factor weighs in favor of abstention because the state court exercised jurisdiction over the *res* in question—the Property—when the state Foreclosure Action began.  In the instant case, which was filed nearly fourteen years after the Foreclosure Action, Mr. Zulli seeks, among other relief, "[d]ismissal of the [Foreclosure Action and] cancel[ation] and discharge [of] the underlying mortgage [ ] and lien."  (Compl., Wherefore clause.)  The Second Circuit has held that jurisdiction over the *res* can be dispositive under Colorado River.  See F.D.I.C. v. Four Star Holding Co., 178 F.3d 97, 101-02 (2d Cir. 1999).  "[B]ecause '[a] foreclosure action is an *in rem* proceeding,' a court has 'exclusive jurisdiction to proceed' where a foreclosure action was first filed in that court, and a parallel proceeding subsequently was filed in another court."  Teves Realty, Inc. v. Bartley, No. 14-CV-3227, 2017 WL 1232443, at *2 (E.D.N.Y. March 31, 2017) (citing Four Star Holding Co., 178 F. 3d at 102).

Second, because both forums are within the state of New York, and absent any contrary indication from the parties, the forums are equally convenient.  Accordingly, this factor militates in favor of the federal court retaining jurisdiction.  See Niagara, 673 F.3d at 101 ("[W]here the

federal court is just as convenient as the state court, that factor favors retention of the case in federal court."). But see Phillips, 252 F. Supp. 3d at 299 (finding neutrality in inconvenience weighs in favor of abstention because "there is plainly inconvenience in having to litigate actively in both state and federal courts at the same time.") (citing Lefkowitz v. Bank of New York, 676 F. Supp. 2d 229, 275 (S.D.N.Y. 2009)).

The third factor, avoidance of piecemeal litigation, weighs in favor of abstention because Mr. Zulli seeks to have this Court review and re-decide issues that he alleged as defenses in the state Foreclosure Action. As discussed supra, at 13-15, the instant Complaint raises issues regarding the state court's jurisdiction over Plaintiff, the timeliness of the Foreclosure Action, allegations of fraud and collusion upon the court, and by the court, within the Foreclosure Action, as well as violations of his right to due process—issues already raised by Plaintiff in his numerous dismissal motions in the Foreclosure Action. (See generally Compl.; Ex. F.) In fact, Judge Tinari, in his November 2, 2023 Order denying Plaintiff's motion to dismiss the Foreclosure Action, concluded that Mr. Zulli is a proper defendant in the Foreclosure Action because he received the Property upon Ms. Zulli's death, and did not dispute that the Loan has been in default since 2008. (Ex. A, at 4.) Yet, here, Plaintiff alleges that Judge Luft's 2019 order granting Chase's 2017 Motion to Amend and allowing Mr. Zulli to be named as a defendant in the Foreclosure Action is void and seeks a ruling, in this Court, that the statute of limitations has expired and an injunction dismissing the Foreclosure Action. (See Compl. ¶¶ 27, 37-38, Wherefore clause.) Plaintiff made these same arguments in his various motions to dismiss in the Foreclosure Action. (See Ex. F, at 11, 14; see also Ex. B, ¶¶ 45, 65.) Similarly, Plaintiff's contentions in the instant Complaint that Chase lacks standing to bring the Foreclosure Action and that the Lawyer Defendants were not the attorneys of

record and/or did not have proper consent to change attorneys were also raised by Plaintiff in state court.  (Compare Compl. ¶¶ 138-49, with Ex. F, at 13-15; Ex. B, ¶¶ 70-71, 75-76.)

This type of piecemeal litigation is essentially what the Colorado River abstention doctrine is meant to avoid.  See Arkwright–Boston Mfrs. Mut. Ins. Co. v. City of New York, 762 F.2d 205, 211 (2d Cir. 1985) ("Maintaining virtually identical suits in two forums . . . would waste judicial resources and invite duplicative effort."); Roy v. Bank of N.Y. Mellon, 17-CV-6729, 2018 WL 4771898, at *5 (E.D.N.Y. Sept. 30, 2018) (finding that avoidance of piecemeal litigation weighs in favor of abstention where plaintiff raised claims of fraud, standing, and breaches of TILA in the foreclosure action—the same claims which form the basis of his claims in the federal action.  Thus, "[t]he Court would necessarily have to decide these same factual and legal arguments, which form the basis of Plaintiffs' claims in this action.")  Accordingly, this factor weighs in favor of abstention.

The fourth factor—the order in which the actions were filed and whether proceedings have advanced more in one forum than in the other—also weighs heavily in favor of abstention.  As an initial matter, the Foreclosure Action has been pending in state court much longer than the instant action.  Chase filed its complaint in the Foreclosure Action in August 2009, nearly fourteen years before Mr. Zulli's May 2023 filing of the instant Complaint.  As discussed above, there have been more than a dozen motions filed in the Foreclosure Action.  Clearly, the state court Foreclosure Action is at a more procedurally and factually advanced stage.  See Cassis v. Fed. Nat'l Mortg. Assoc., No. 21-CV-969, 2021 WL 6197064, at *6 (E.D.N.Y. Dec. 31, 2021) (factor four favored abstention where state court foreclosure action "has been pending for over eleven years and is now in an advanced stage of litigation"); Teves Realty, 2017 WL 1232443, at *3 (finding Colorado River abstention applied to foreclosure action that "ha[d] been active and ongoing for several

years" prior to federal court action). Notably, Plaintiff is awaiting a decision on his appeal of Judge Tinari's most recent order denying dismissal of the Foreclosure Action. (See e-courts.) Additionally, on January 5, 2024, Plaintiff moved to disqualify Judge Tinari from the Foreclosure Action. (Id.) For these reasons, this factor weights in favor of abstention.

The fifth factor involves the substantive law governing the merits of the case and weighs in favor of abstention because the applicable law is mainly New York law. Although Mr. Zulli asserts two federal claims, (under the FDCPA and the Fourteenth Amendment through Section 1983), each relies on the same underlying facts: whether the Foreclosure Action is proper—clearly a matter of state law. See Krondes, 2018 WL 2943774, at *4 ("No matter how one parses the complaint in this action . . . it clearly relates to matters that are subject to the mortgage foreclosure proceeding in the . . . State Court.") (citation omitted). For example, though brought under the guise of the FDCPA, Plaintiff's federal claim encompasses the same arguments at issue in the state Foreclosure Action—whether Chase has standing to pursue foreclosure for an alleged "time-barred debt." (See Compl. ¶ 11.) Similarly, with respect to Plaintiff's due process allegations, he raised the same arguments in support of his dismissal motion within the Foreclosure Action. (Compare Compl. ¶¶ 58-61 with Ex. F, at 11 and Ex. B, ¶ 6 ("The Fourteenth Amendment protection right to due process includes having notice and opportunity to be heard and to not allow fraud to be used to obtain a judgment/order.")

Moreover, Plaintiff's federal claims are patently deficient.[8] First, with respect to Plaintiff's Section 1983 claim asserting violations of due process, the Judicial Defendants are the only state

---

[8] As explained above, the substance of Plaintiff's federal claims raise the same issues that are being litigated in the state court proceeding. Furthermore, the Court highlights the deficiencies in Plaintiff's federal claims to make clear that, if abstention under Colorado River or other doctrines, were not warranted, the Court would dismiss the federal claims in this action with prejudice and decline supplemental jurisdiction over the state law claims.

actors to which this claim can be asserted against, and they are immune from suit.[9]  See Ciambriello

v. County of Nassau, 292 F.3d 307, 323 (2d Cir. 2002) ("In order to state a claim under § 1983, a

plaintiff must allege that he was injured by either a state actor or a private party acting under color

of state law.")

      Plaintiff's FDCPA claims against the other Defendants are also patently deficient.  To state

a valid claim under the FDCPA, "(1) the plaintiff must be a 'consumer' who allegedly owes the

---

[9]  Plaintiff's claims for injunctive relief against the Judicial Defendants are precluded by the text of § 1983, which states that, "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983.  Here, no declaratory decree was violated and declaratory relief is available to Plaintiff through an appeal of the state court judges' decisions in state court.  McKeown v. N.Y. State Comm'n on Jud. Conduct, 377 F. App'x 121, 124 (2d Cir. 2010) ("To the extent that Appellant seeks injunctive relief against Judge Scarpino, moreover, Appellant does not allege that a declaratory decree was violated or that declaratory relief was unavailable, and so § 1983 relief is not available."); LeDuc v. Tilley, No. 05-CV-157, 2005 WL 1475334, at *7 (D. Conn. June 22, 2005) ("Declaratory relief against a judge for actions taken within his or her judicial capacity is ordinarily available by appealing the judge's order.").

  Any damages claims against the Judicial Defendants are also precluded.  "It is well settled that judges generally have absolute immunity from suits for money damages for their judicial actions," Bliven v. Hunt, 579 F.3d 204, 209 (2d Cir. 2009) (citing Mireles v. Waco, 502 U.S. 9, 9–10 (1991)), whether they are sued in their individual or official capacities, Szymonik v. Connecticut, No. 3:18-CV-263, 2019 WL 203117, at *7 (D. Conn. Jan. 15, 2019), aff'd, 807 F. App'x 97 (2d Cir. 2020) (summary order). See also Aron v. Becker, 48 F. Supp. 3d 347, 363 n.8 (N.D.N.Y. 2014) ("Judicial immunity shields judges from suit to the extent that they are sued in their individual capacities . . . . The Eleventh Amendment, on the other hand, shields judges from suit to the extent that they are sued in their official capacities.") (citation omitted).  Notably, judicial immunity is not overcome by allegations of bad faith or malice.  See Bliven, 579 F.3d at 209 (citing Pierson v. Ray, 386 U.S. 547, 554 (1967). "[A]n allegation that an act was done pursuant to a conspiracy has no greater effect than an allegation that it was done in bad faith or with malice, neither of which defeats a claim of absolute immunity."  Dorman v. Higgins, 821 F.2d 133, 139 (2d Cir. 1987).

  Here, Judge Luft and Judge Tinari presided over the state court Foreclosure Action in their role as Justices of the Suffolk County Supreme Court.  All the actions they allegedly took in that capacity were judicial. Accordingly, Plaintiff's Section 1983 claim for damages against the Judicial Defendants are subject to dismissal on immunity grounds.  See Sage-El v. Tully, No. 15-CV-5606, 2015 WL 6455242, at *2 (E.D.N.Y. Oct. 26, 2015) ("To the extent [the] plaintiff seeks to bring claims against the judges involved in his state court proceedings his claims must be dismissed, as judges have absolute immunity for their judicial acts performed in their judicial capacities.") (citing Mireles v. Waco, 502 U.S. 9, 11 (1991).)

debt or a person who has been the object of efforts to collect a consumer debt, . . . (2) the defendant collecting the debt [must be] considered a 'debt collector,' and (3) the defendant [must] ha[ve] engaged in [an] act or omission in violation of FDCPA requirements." Gold v. Shapiro, Dicaro & Barak, LLC, No. 18-CV-6787, 2019 WL 4752093, at *3 (E.D.N.Y. Sept. 30, 2019) (alterations in original) (internal citation omitted).). A "consumer" is "any natural person obligated or allegedly obligated to pay any debt." See 15 U.S.C. § 1692a (3). A "debt collector" is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." Id. § 1692a (6). Critically, claims brought under the FDCPA have a one-year statute of limitations. See Benzemann v. Citibank N.A., 806 F.3d 98, 100–01 (2d Cir. 2015) (citing 15 U.S.C. § 1692k(d)).

The Complaint alleges generally, "that "Bryan is a consumer," "Chase and its lawyers are debt collectors," and "[t]he foreclosure action in state court is an attempt to collect a debt." (Compl. ¶¶ 18, 19.) Plaintiff alleges that Defendants violated various provisions of the FDPCA, including § 1692e, which precludes debt collectors from using "false, deceptive, or misleading misrepresentation[s] in the collection of any debt."

Plaintiff's FDCPA claims are premised on the filing and pursuit of the Foreclosure Action in state court based on an allegedly time-barred debt. These claims are precluded by FDCPA's one-year statute of limitations. Chase filed the Foreclosure Action in 2009, and Plaintiff did not file the instant Complaint until May 10, 2023—clearly outside the one-year statute of limitations for FDCPA claims. "[T]he statute of limitations on an FDCPA claim premised on the fraudulent filing of a debt-collection suit begins to run when the complaint is filed or when the debtor receives notice of the action, rather than on the filing of any individual documents within the lawsuit."

22

Weaver v. Boriskin, No. 16-CV-00688, 2020 WL 13558738, at *3 (E.D.N.Y. Mar. 10, 2020).  "For subsequent filings in an allegedly fraudulently filed debt-collection proceeding to have their own statutes of limitations, they must independently violate the FDCPA."  (Id.)

Plaintiff asserts that his FDCPA claims that are premised on Chase's 2017 Motion to Amend are timely because:  (1) Plaintiff did not learn of the Motion to Amend until April 2022; and (2) his bankruptcy filing tolled the statute of limitations for his FDPCA claim.  These arguments are meritless.  First, the state court granted the Motion to Amend in March 2019, more than four years before the Complaint was filed.  Second, even assuming, for the sake of argument, that Plaintiff was unaware of the Motion to Amend until April 2022, he was served with a copy of the amended complaint in the Foreclosure Action in 2019.  Third, even assuming, for the sake of argument, that the one-year statute of limitations did not begin to run until April 2022 when Plaintiff allegedly saw the Motion to Amend for the first time, his FDCPA claims would still be time-barred because his bankruptcy filing did not toll the statute of limitations for his FDCPA claims and his Complaint was not filed until May 10, 2023.  See Levine v. Fin. Freedom, No. 18-CV-4127, 2018 WL 6492872, at *6 (D.N.J. Dec. 10, 2018) ("Plaintiff is incorrect regarding the filing of a bankruptcy petition imposing an automatic stay on the statute of limitations running on her FDCPA claim.  Section 108's grant of an extension of time to bring claims is inapplicable here because the extension applies to the Trustee appointed by the Bankruptcy Court, not the debtor.  In the bankruptcy proceedings, Plaintiff was the debtor, not the Trustee.")

The only conduct challenged in the Complaint that could possibly be the basis for a timely FDCPA claim is Knuckles' filing of two letters in the Foreclosure Action in November and December 2022.  In those letters, Knuckles states it is representing Chase.  Plaintiff alleges that these letters are fraudulent, deceptive, and violate the FDCPA because Chase assigned the

Mortgage in 2017 and, according to Plaintiff, Chase is not "part of the Supreme Court case" and is "not an aggrieved party for whom relief may be granted." (Compl. ¶ 149.) These FDCPA claims are frivolous. (See n. 7 supra.)[10]

Accordingly, the fifth factor favors abstention as state law governs Plaintiff's claims based on the underlying Foreclosure Action and the Complaint fails to allege any colorable federal claims.[11] See Bromfield, 2016 WL 632443, at *5 ("Although the Complaint purports to invoke federal law, the allegations do not come close to stating a colorable federal claim," and state law "supplies the rule of decision.")

The sixth and final factor—whether the state procedures are adequate to protect the plaintiff's federal rights—also weighs in favor of abstention. As discussed above, Mr. Zulli does not state claims for the violation of any federal right and his core claims—sounding in fraud are state claims and do not implicate any federal rights that the state court cannot adequately protect. In sum, because the majority of the Colorado River factors weigh in favor of abstention, the Court abstains from jurisdiction over this case and dismisses this action, without prejudice, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.[12]

---

[10] Plaintiff's FDCPA claims against Chase also fail on other grounds. Because Chase owned the Mortgage at the time the Foreclosure Action was commenced, Chase was not a debt collector under the FDCPA. See Bongiovanni v. PennyMac Corp., No. 19-CV-3260, 2021 WL 1193043, at *7 (March 30, 2021) (citing Krondes, 2018 WL 2943774, at *5.) ("Put simply, a debt collector collects debt owed to another person, while a creditor seeks to collect on a debt owed to it.") (citation omitted). Accordingly, courts in the Second Circuit have concluded that entities to which a debt is owed directly are not debt collectors under the FDCPA. See e.g., Gold, 2019 WL 4752093, at *4 (E.D.N.Y. Sept. 30, 2019); Graham v. Select Portfolio Servicing, Inc., 156 F. Supp. 3d 491, 515 (S.D.N.Y. 2016) ("Mortgage companies collecting debts are not debt collectors[.]") (citation, quotation marks, and alterations omitted).

[11] Because Defendants' motions are being granted on Federal Rule 12(b)(1) grounds, the Court need not reach Defendants' Rule 12(b)(6) arguments, However, as explained above, Plaintiff fails to allege any plausible federal claims and the Court does not have diversity jurisdiction over Plaintiff's state law claims. See Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 553-54 (2005). Accordingly, if the Court did not abstain, the Court would have dismissed the federal claims and declined supplemental jurisdiction over Plaintiff's state law claims.

[12] Because the Court finds that it is appropriate to abstain under Colorado River, it need not address the Younger abstention doctrine. Nonetheless, the Court finds that it also lacks subject matter jurisdiction of Plaintiff's claims for declaratory and injunctive relief pursuant to Younger v. Harris, 401 U.S. 37, 45 (1971). The Younger abstention doctrine applies to civil proceedings that "implicate a State's interest in enforcing the orders and judgment of its

## D. **Leave to Amend**

*Pro se* plaintiffs are ordinarily given the opportunity "to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." Shomo v. City of New York, 579 F.3d 176, 183 (2d Cir. 2009) (internal quotation omitted). Nevertheless, "a district court may deny a *pro se* plaintiff leave to amend when amendment would be futile." Boddie v. N.Y. State Div. of Parole, No. 08-CV-911, 2009 WL 1033786, at *5 (E.D.N.Y. Apr. 17, 2009). "[An] [a]mendment is futile if it fails 'to cure prior deficiencies.'" Chunn v. Amtrak, 916 F.3d 204, 208 (2d Cir. 2019) (quoting Panther Partners, Inc. v. Ikanos Commc'ns, Inc., 681 F.3d 114, 119 (2d Cir. 2012)). "Thus, the standard for denying leave to amend based on futility is the same as the standard for granting a motion to dismiss." IBEW Local Union No. 58 Pension Tr. Fund & Annuity Fund v. Royal Bank of Scot. Grp., PLC, 783 F.3d 383, 389 (2d Cir. 2015). "If the problems with a claim are 'substantive' rather than the result of an 'inadequately or inartfully pleaded' complaint, an opportunity to replead would be 'futile' and 'should be denied.'" Jordan v. Chase Manhattan Bank, 91 F. Supp. 3d 491, 510 (S.D.N.Y. 2005) (quoting Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000)).

---

courts." Sprint Commc'ns, Inc. v. Jacobs, 571 U.S. 69, 72-73 (2013) (internal quotation marks omitted). Such abstention is limited to three categories of state court proceedings: "(1) state criminal prosecutions; (2) civil enforcement proceedings; and (3) civil proceedings that implicate a state's interest in enforcing the orders and judgements of its courts." Toczek v. Alvord, 841 Fed. App'x. 263 (2d Cir. 2021) (citing Sprint, 571 U.S. at 72-73). Courts in this circuit have repeatedly held that the Younger abstention doctrine applies where a plaintiff seeks injunctive and/or declaratory relief relating to the same property that is the subject matter of the underlying foreclosure action in state court. Plotch v. Wells Fargo Bank, N.A., 2018 WL 344967, at *2 (E.D.N.Y. Jan. 9, 2018) (citing Calizaire v. Mortg. Elec. Registration Sys., Inc., No. 14-CV-1542, 2017 WL 895741 (E.D.N.Y. Mar. 6, 2017) ("determining the rights and obligations of the parties with respect to the subject property currently under the jurisdiction of the state court . . . falls within [a] category of proceedings identified by the Supreme Court as appropriate for abstention."), aff'd, 758 F. App'x 221 (2d Cir. 2019); see also Hall v. US Bank, No. 20-CV-277, 2020 WL 705212, at *2 (E.D.N.Y. Feb. 12, 2020) (finding that plaintiff's request for injunctive relief, as part of his challenge to a pending foreclosure action in state court, must be dismissed pursuant to Younger doctrine).

Here, the Court is abstaining from hearing Plaintiff's claims under the <u>Colorado River</u> doctrine and no amendments would alter that conclusion. Accordingly, amendment would be futile.[13] Accordingly, the Court declines to grant Plaintiff leave to amend his Complaint.

### III. CONCLUSION

For the reasons stated above, the Court grants Defendants' motions and dismisses Plaintiff's Complaint in its entirety without prejudice pursuant to the <u>Colorado River</u> doctrine. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. <u>See</u> <u>Coppedge v. United States</u>, 369 U.S. 438, 444–45 (1962).

The Clerk of Court is directed to close this case and send a copy of this Order to *pro se* Plaintiff.

**SO ORDERED.**

_____/s/(JMA)_____

Dated:  August 27, 2025                    Joan M. Azrack
        Central Islip, New York            United States District Judge

---

[13]  Any amendment to address the substantive deficiencies with Plaintiff's federal claims would also be futile.